

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KIM STROTHER, PERSONALLY AND ON BEHALF OF THE ESTATE OF KENNETH STROTHER | CIVIL ACTION |
| VERSUS | 03-0204 |
| THE CITY OF NEW ORLEANS | SECTION "T"(1) |

Before the Court is a Motion for Summary Judgment (Document 39) filed on behalf of the Defendant, The City of New Orleans ("The City"). The parties waived oral argument and the matter was taken under submission on April 21, 2004. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

**I. BACKGROUND**

This case arises out of an incident in which Kenneth Strother ("Strother") was shot by a New Orleans Police Officer in an alley when attempting to flee after burglarizing a veterinary clinic. On January 31, 2002 at 4:39 a.m., Officer Robert Macklin, Officer Julie Basha, and



Officer Monique Davis responded to a burglary in progress at 7608 Maple Street. Officer Macklin observed Strother make his way through the rooms in the building. He alleges that when the alarm on one of doors began to off, he could not tell which door the alarm was sounding from. Her heard a female scream and, as he made his way to the back of the building, he observed Strother turn the corner. He alleges that he identified himself as a police officer and gave Strother a command to stop. Macklin states that Strother disregarded the command and continued toward him. Officer Macklin drew his firearm and pointed it at Strother. Macklin alleges that as Stroteher grabbed his weapon with both hands and lunged forward, he feared he might suffer great bodily harm or death. At this time, he took one step back and fired one round. Strother pushed away and attempted to flee from the rear of the building over a fence. At that time, Macklin and Basha allegedly commanded him to show his hands, turn around and get down on the ground, but instead he continued to try and flee over the fence. At this time, Officer Davis came to the rear of the building and allegedly Strother fell to his knees. Macklin states that Strother continued to refuse to lie on the ground, but instead stood on his knees with his back to them, then fell to the ground and rolled over complaining of pain to his hand. At this time Officers Basha and Davis were able to secure his hands and handcuff him. Strother and Officer Robert Macklin were the only two witnesses to the shooting,

## II. LAW AND ANALYSIS OF THE COURT

### A. Law on Summary Judgmemt

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *cert. denied*, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Law on Qualified Immunity

Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Fifth Circuit Court of Appeal discussed the law of qualified immunity less than a year ago in *Mace v. City of Palestine*, 33 F.3d 621, 623 (5th Cir. 2003).

Claims of qualified immunity require a two-step analysis. First, we must

> determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officers conduct violated a constitutional right. If there is no constitutional violation, our inquiry ends. However, if the allegations could make out a constitutional violation, we must ask ourselves whether the right was clearly established- that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 623-24, citing *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) and *Price v. Roark,* 256 F.3d 364, 369 (5th Cir. 2001).

The first step is to determine whether the plaintiff alleged a violation of a clearly established constitutional right. Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment. *Bazan v. Hidalgo County,* 246 F.3d 481 (5th Cir. 2001), quoting *Tennessee v. Garner,* 471 U.S. 1, 7, 85 L.Ed.2d 1, 105 S.Ct. 1694 (1985).

The next inquiry is whether the right to be free from a seizure by deadly force was clearly established- that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Mace,* supra at 623-24. The reasoanbleness inquiry in an excessive force case is an objective one. *Id.,* quoting *Graham v. Connor,* 490 U.S. 386, 395, 104 L.Ed.2d 443, 109 S.Ct. 1865 (1989). However, on summary judgment, the objective reasonableness inquiry is question of law. In other words, this question of law ***cannot*** be decided if there are ***genuine issues of material fact***. *Id.,* citing Fed. R. Civ. P. 56(c) and *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir. 1997) (emphasis in original).

### C. Court's Analysis

The Court finds that the facts alleged in the plaintiff's complaint and her statement of material facts in dispute show that Macklin's use of deadly force in seizing Strother implicates the Fourth Amendment, as "apprehension by the use of deadly force is a seizure subject to the

reasonableness requirement of the Fourth Amendment." *Bazan v. Hildalgo County*, 246 F.3d 481 (5th Cir. 2001),, quoting *Tennessee v. Garner*, 471 U.S. 1, 7, 85 L.Ed. 2d 1, 105 S.Ct. 1694 (1985). Therefore, the first prong of the test is satisfied.

Because the violations in this case could make out a constitutional violation, the inquiry moves to whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. In *Bazan*, a defendant law enforcement officer who used deadly force was the only eyewitness and moved for summary judgment on the basis of qualified immunity. The Fifth Circuit Court of Appeals stated:

> In short, in stating that jury has to decide if this is the way this occurred, the district judge concluded that the Trooper's credibility was at issue and thus a real – genuine – dispute existed as to material facts – what occurred in the field, when deadly force was employed. This is consistent with the Supreme Court's recent statement that, in deciding whether to grant judgment as a matter of law, a court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent that the evidence comes from disinterested witnesses.*

*Bazan*, 246 F.3d at 491-92, quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151, 147 L.Ed. 2d 105, 120 S.Ct. 2097 (2000) (emphasis in original).

In the instant case, the plaintiff argues that the evidence the defendant claims is uncontradicted and unimpeached comes, for the most part, from the interested witness himself. Plaintiff argues that the forensic evidence, the statements of FTO Basha and Officer David, the investigative report of NOPD Detective James Anderson, the inconsistent statements of Macklin, and the expert report of James Willem all show that Macklin's testimony could reasonably be rejected by a jury.

"Cases that turn crucially on the credibility of witness' testimony in particular should *not* be resolved on summary judgment." *Bazan*, 246 F.3d 492, quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir. 1999) (emphasis added in *Bazan*). This Court agrees and finds that, as genuine issues of material fact exist regarding the events leading up to the shooting, summary judgment is inappropriate.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the Defendant, The City of New Orleans, be and the same is hereby **DENIED**.

New Orleans, Louisiana, this 21st day of April, 2004.

G. THOMAS PORTEOUS, JR.
UNITED STATES DISTRICT JUDGE